ROGERS, J.
 

 On July 22, 1927, a large amount of crude oil owned by the Crystal Oil Refining Corporation was destroyed by fire at the corporation’s pumping station located at or near Mooringsport, La. The fire also damaged five tanks in which the oil was contained.
 

 At the time of the fire, the Crystal Oil Refining Corporation held two policies of insurance in the Royal Insurance Company, Limited. These policies, which were taken out simultaneously, were numbered respectively 18 OIA and 19 OIA. The letters ■“O I A” refer to the Oil Insurance Association, through which the policies were issued.
 

 After the fire, the Crystal Oil Refining Corporation submitted two proofs of loss, one under policy No. 19 for the oil destroyed, and the other under policy No. 18 for the five tanks that were damaged. The insurance company paid for the loss of the oil under policy No. 19,. but it declined to pay for the damage to tanks under policy No. 18, on the ground that no property at Mooringsport was embraced in the policy.
 

 About five months after it had been paid in full for the oil destroyed, the Crystal Oil Refining Corporation, under advice of counsel, filed a supplemental proof of loss under policy No. 19, covering its loss on the tanks in which the oil was stored. The insurance company refused to recognize any liability for the damages to the tanks, and this suit was filed for their recovery.
 

 The court below rejected plaintiff’s demand, and plaintiff has appealed from the judgment.
 

 The contention of the defendant insurance company is that the plaintiff took out policy No. 18, which is a closed policy, to cover its buildings, tanks, and other structures, and that plaintiff took out policy No. 19, which is an open policy, to cover its stock of crude petroleum and its products.
 

 An examination of the policies discloses that policy No. 18 refers to buildings, structures, tanks, and equipment located at or near Cedar Grove, Caspiana, Grand Bayou, and Lewis, La. No mention is made of any property situated at Mooringsport. Policy No. 19 refers to crude petroleum and its products stored at Cedar Grove, Lewis, and Grand Bayou, La. v Under the .terms of the policy, the insured was required to make biweekly reports to the insurance company showing the total daily average value for the preceding fourteen days of crude petroleum and its products at all locations. And at the end of each month the premiums due
 
 *513
 
 Tinder the policy were calculated and fixed on the basis of the average amount and .value of the stock on band during the preceding period. This method of arriving at the amount of the premiums due under the policy was adopted, because plaintiff was from time to time buying crude petroleum, refining it and selling its products, and plaintiff’s stock on hand was constantly fluctuating.
 

 Although plaintiff had inadvertently failed to describe in policy No. 19 any property at Mooringsport, it was discovered after the fire that plaintiff had included in its biweekly reports, in which no locations were given, its stock of crude petroleum and products stored at or near that town, and that the insurance premiums had been calculated and paid upon the values of the stock. When the insurance company was apprized of these facts, it paid plaintiff $5,710.88 to cover the loss caused by the destruction of its crude oil and products at Mooringsport. The insurance company also amended policy No. 19 so as to expressly extend its liability to the insured’s crude petroleum and its products located at or near Mooringsport. This was done by attaching two slips or riders to the instrument.
 

 Plaintiff predicates its right of recovery for damages to its oil tanks on the following provisions appearing in the typewritten form attached to policy No. 19, viz.:
 

 “It is understood and agreed that should any of the within described property contained in the statement as previously provided be damaged or destroyed by fire between the dates provided for the reporting of values by the assured, this Company agrees that this contract shall attach to the extent of not exceeding 100 per cent. (100%) of the value of tank and contents damaged or destroyed as shown by the books of the assured at the time of the fire, after deducting all other fire insurance covering the property, subject to the limit of liability noted herein.”
 

 “If, during the term of this contract, the assured shall acquire any property as described abovei not already included in the statement filed at the date or commencement of the term of this contract herein provided, this contract shall automatically apply and cover such property to an amount of not exceeding 100 per cent. (100%) of $3,000,000.00 on or in any one tank until the new locations are reported in the 14 days statement of values, to be rendered by the insured as herein stipulated.”
 

 Plaintiff contends the recital in the policy that the “contract shall attach to the extent of not exceeding 100% of the value of the tank and contents,” means that payment must be made for both tank and contents, and not for the contents alone.
 

 Defendant contends that policy No. 19 does not cover, and was not intended by the contracting parties to cover, the tanks located at Mooringsport; that the reference to tanks in the provisions hereinabove quoted were inadvertent and erroneous, and were evidently copied into the typewritten form from another form covering both tanks and their contents of oil.
 

 Defendant points out that in the provisions in question reference is made to the “within described property” and to “property as described above.” And defendant
 
 *515
 
 shows that the only property described is the property mentioned in the first paragraph of the policy, under which plaintiff was insured against all direct loss by fire as follows, viz.:
 

 “To the following described property while located and contained as described herein and not elsewhere, to-wit:
 

 “On crude petroleum and/or its products and/or stock, including contents of tank cars while located on premises described herein, etc. at Plants Nos. 1 and 2 at Cedar Grove, at or near Lewis and Grand Bayou, La.”
 

 The evidence in the record sustains defendant’s contention. It shows that at the time plaintiff took out the two policies of insurance plaintiff’s plant at Mooringsport had been partially dismantled, and plaintiff’s representatives were of opinion that there Was not sufficient value at that location to warrant its coverage. It developed, however, after the fire that it was only the gasoline station that had been dismantled, the pumping station being still in operation.
 

 Prior to the issuance of the policies, plaintiff’s representatives prepared an itemized list of its properties and their values for the Louisiana Rating & Fire Prevention Bureau. This list was submitted to the bureau by defendant’s representatives for the purpose of obtaining the publication of advisory rates on the properties therein mentioned.
 

 Neither in the list furnished by plaintiff nor in the advisory ratings published by the Louisiana Rating & Fire Prevention Bureau is any reference whatever made to plaintiff’s property at Mooringsport.
 

 The biweekly statements submitted by plaintiff to the insurance company upon which the premiums on the policies were adjusted and fixed at the end of each month referred only to plaintiff’s stock of crude oil and its products. . Neither tanks nor buildings nor any other structures are mentioned in the statements, and no premium was ever paid under policy No. 19, except for the coverage of crude oil and its products. The value of tanks was never considered in adjusting and fixing the premiums under this policy.
 

 When the fire occurred, plaintiff made its claim for damage to its tanks under policy No. IS and for the destruction of its oil under policy No. 19. About three months thereafter, plaintiff filed a second proof of loss under policy No. 18, in which it expressed a willingness to accept under the policy one-half of its claim for the damage to its tanks and equipment. On November 8, 1927, plaintiff was paid under policy No. 19 for the destruction of its oil and products. The payment was received by plaintiff “in full satisfaction of all claims for loss and/or damage by fire which occurred on or about the 22nd day of July, 1927, covered by policy No. 19. * * * ”
 

 It was not until April, 1928, about five months after it had been paid in full for its claims under policy No. 19, that plaintiff, under advice) of counsel, attempted to collect for its loss on the tanks under the provisions of policy No. 19.
 

 The acts of the contracting parties both before and after the fire plainly indicate that it was their intention to insure plaintiff’s structures and tanks under policy No. 18 and plaintiff’s oil and products under policy
 
 *517
 
 No. 19. Obviously, if policy No. 19 covered tanks ks well as oil, there would have been no necessity for issuing policy No. 18.
 

 For the reasons assigned, the judgment appealed from is affirmed.